USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/28/17_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SONY CORPORATION, SONY
STORAGE MEDIA AND DEVICES
CORPORATION, SONY DADC US INC.,
and SONY LATIN AMERICA INC.,

Plaintiffs,

-against-

FUJIFILM HOLDINGS CORPORATION,
FUJIFILM CORPORATION, FUJIFILM
HOLDINGS AMERICA CORPORATION,
and FUJIFILM RECORDING MEDIA
U.S.A., INC.,

Defendants.

**MEMORANDUM
OPINION & ORDER**

16 Civ. 5988 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this action, Plaintiffs – Japanese and American corporations affiliated with

Sony Corporation (collectively, "Plaintiffs" or "Sony") bring claims for, inter alia, breach of

contract, anti-competitive conduct, and patent infringement against Defendants – Japanese and

American corporations affiliated with Fujifilm Corporation (collectively, "Defendants" or

"Fujifilm"). The parties' dispute arises from the marketing and sale of products conforming to

the seventh generation of a technology standard for magnetic tape storage. This technology

standard – promulgated by the Linear Tape-Open ("LTO") Consortium – is known as the "LTO7

standard." On the basis of a forum selection clause contained in a contract Defendants signed

with third parties, Plaintiffs have moved for an anti-suit injunction pursuant to Federal Rule of

Civil Procedure 65(a). Plaintiffs seek to enjoin Defendants from continuing with litigation they

initiated against Plaintiffs before the International Trade Commission (ITC) and in Tokyo

District Court in Japan. For the reasons stated below, Plaintiffs' motion will be denied.

## BACKGROUND

### I.   DEVELOPMENT OF THE LTO STANDARD

The products at issue in this action, and in the actions that Plaintiffs seek to enjoin, are a type of half-inch magnetic tape, which has been used for data storage for more than fifty years. (Cmplt. (Dkt. No. 1) ¶ 55) Companies initially produced proprietary magnetic tape products, such that a customer could not switch from one manufacturer to another without changing the customer's entire tape storage system. (Id. ¶ 55) In the late 1990s, however, International Business Machines (IBM), Hewlett-Packard (HP), and Seagate (now Quantum) (collectively, the "Consortium companies") formed the LTO Consortium to develop an "open" standard, meaning that conforming products from different manufacturers would be compatible. (Id. ¶¶ 54, 56) The Consortium's first iteration of this standard – LTO1 – was made available for licensing in 2000. (Id. ¶ 56) The Consortium companies – commonly referred to as the Technology Provider Companies ("TPCs") – have released subsequent iterations that increased the storage capacity, speed, and capabilities of conforming LTO products. (Id. ¶¶ 57-58)

Sony and Fujifilm were early manufacturers of LTO products, and at first agreed to cross-license many of their patents relating to the technology. (Id. ¶¶ 62-63)

### II.   NEGOTIATIONS CONCERNING THE LTO7 AGREEMENT

In order to become an LTO manufacturer, a company must sign a licensing agreement with the TPCs promising to manufacture products to certain specifications and to license any of that company's patents that are essential to the LTO standard to other LTO manufacturers. (Id. ¶¶ 7, 53)

In December 2013, the TPCs began discussing the terms of the LTO7 licensing agreement with Sony and Fujifilm. (See Yahiro Decl. (Dkt. No. 33) ¶¶ 8-9) The following October, Fujifilm representatives met with TPC representatives. (Id. ¶ 10) After this meeting,

Fujifilm sent a letter to the TPCs to confirm that Fujifilm would negotiate licensing of its patents

directly with other LTO7 manufacturers, and not through the TPCs. (Id.) In a November 21,

2014 email, the TPCs stated that they had no objection to direct negotiations, and that the TPCs

were considering including a requirement in the proposed LTO7 agreement that such licensing

be "reasonable and non-discriminatory." (Id. ¶ 11)

After further discussion, Fujifilm proposed to the TPCs that the LTO7 agreement

provide that signatories would license their patents in accordance with their "standard terms and

conditions." (Id. ¶ 12) On May 26, 2015, Sony sent the TPCs certain of its proposed terms for

the LTO7 licensing agreement, including that essential patents be licensed on "'reasonable and

nondiscriminatory conditions.'" (Aug. 25, 2016 DeFranco Decl. (Dkt. No. 21), Ex. 1 at 1[1])

On June 16, 2015, the TPCs sent separate letters to Sony and Fujifilm outlining

some of the likely terms for the LTO7 agreement, including that manufacturers agree to license

commercially essential patents to other LTO7 manufacturers on "'reasonable and

nondiscriminatory [RAND] terms and conditions,'" and providing that those other manufacturers

would be third-party beneficiaries of that commitment in the LTO7 agreement. (Yahiro Decl.

(Dkt. No. 33) ¶ 13; Cmplt. (Dkt. No. 1) ¶ 69) The letter also states that TPCs expect that the

LTO7 agreement will "provide that all disputes under the agreement will be resolved in courts

located in New York, New York USA and that the parties consent to such exclusive

jurisdiction." (Yahiro Decl. (Dkt. No. 33) ¶ 13; id., Ex. G at 2)

---

[1] Many of the filings in this action have been sealed, because they contain commercially
sensitive and proprietary information. Accordingly, the page numbers of documents referenced
in this Order correspond to the page numbers provided on the documents themselves, and not
those designated by this District's Electronic Case Filing system.

In a June 24, 2015 letter, Fujifilm informed the TPCs that it would not agree to license commercially essential patents. As to technically essential patents, Fujifilm stated that it would agree to license such patents on its "standard" terms, and not on "RAND [reasonable and non-discriminatory terms and conditions]." (Id., Ex. H at 1-2) Fujifilm further stated that it had "no objection to TPC's proposal to have all disputes under the agreement resolved in New York courts." (Id., Ex. H at 3; see also id. (Dkt. No. 33) ¶ 17)

On July 24, 2015, the TPCs released the first version of the LTO7 licensing agreement to Sony and others. (Cmplt. (Dkt. No. 1) ¶ 70)

In a July 27, 2015 letter, Fujifilm informed the TPCs that Fujifilm would withdraw from the LTO7 market if provisions set forth in its June 24, 2015 letter were not adopted. (Yahiro Decl. (Dkt. No. 33) ¶ 18) Shortly thereafter, the TPCs withdrew the proposed LTO7 licensing agreement. (Cmplt. (Dkt. No. 1) ¶ 70)

On September 15, 2015, the TPCs released a revised LTO7 licensing agreement (the "LTO7 Agreement"). (Id. ¶¶ 7, 73) The LTO7 Agreement contains two provisions that are relevant here. Section 8.2 (the "licensing section") requires manufacturers to license – on standard and nondiscriminatory terms – its patent claims essential for the making, using, or selling of LTO7 products or components to other manufacturers who have signed an LTO7 Agreement with the TPCs.[2] (Id., Ex. 1 § 8.2) While the parties to this action dispute what types

---

[2] Section 8.2 refers to LTO7 licensees as Format Specification Participants (FSPs). In its entirety, Section 8.2 reads as follows:

> FSP agrees to grant to other parties, who have entered into an LTO7 Tape Media License Agreement (Agreement Package AP-75) or LTO7 Trademark Package License Agreement (Agreement Package AP-79) (such other parties hereinafter "Other FSPs", such agreements hereinafter "Other FSP Agreements") with the TECHNOLOGY PROVIDER COMPANIES to use the LTO7 Format, the right to obtain, at any time, and from time to time, during the term of this Agreement, a

of patent claims are essential and thus are required to be licensed[3] (id. (Dkt. No. 1) ¶ 1), that question does not bear on the Court's resolution of this motion. Relevant to the decision here, however, is the last sentence of Section 8.2, which provides that, "Other [LTO7 Agreement signatories] are intended third party beneficiaries of this Section 8.2, with the power to enforce it directly." (Id., Ex. 1 § 8.2)

The second relevant provision is Section 11.11, which provides that

> This Agreement shall be construed and the legal relations between the parties hereto shall be determined in accordance with the laws of State of New York, United States of America as such law applies to contracts signed and fully performed in New York. The parties consent to the exclusive jurisdiction of courts located in New York, New York for all claims arising under or in connection with this Agreement. THE PARTIES AGREE TO WAIVE THEIR RIGHT TO A TRIAL

---

> license of the broadest scope which FSP has the right to grant at any time during such term, but of no greater scope than to make, have made, use, import, have imported and sell LTO7 tape product and LTO7 tape product components that are the subject of, and as defined in, the applicable Other FSP Agreement with the TECHNOLOGY PROVIDER COMPANIES), under nondiscriminatory FSP standard terms and conditions. Said right shall be with respect to Essential Patent Claims (including corresponding patents of other countries) with a priority date prior to the termination of this Agreement, under which patents, or the applications therefor, FSP or any of its Affiliates has the right, at any time during the term of this Agreement, to grant licenses to third parties (other than Affiliates). Said right of Other FSPs shall be exercisable with respect to any such Essential Patent Claims whether or not issued and whether or not the applications therefor exist at the time such right is exercised. The effective date of said license agreement shall be a date, determined by the requesting Other FSP, as early as the date on which the Other FSP first used the subject matter of the patent or patent application. Other FSPs are intended third party beneficiaries of this Section 8.2, with the power to enforce it directly.

(Cmplt. (Dkt. No. 1), Ex. 1 § 8.2)

[3] The LTO7 Agreement provides that

> "Essential Patent Claims" shall mean those patent claims, regardless of when or where the patents are filed for or issued, which relate directly to the LTO7 Format, as set forth in the LTO7 Format Document, and which must of necessity be practiced for compliance with the LTO7 Format in the making, using, or selling of an LTO7 Tape Product or an LTO7 Tape Product Component.

(Cmplt. (Dkt. No. 1), Ex. 1 § 1.6)

BY JURY IN ANY DISPUTE ARISING OUT OF OR RELATING TO THIS
AGREEMENT.

(Id. § 11.11 (emphasis in original))

## III. THE PARTIES' UNSUCCESSFUL LTO7 LICENSING NEGOTIATIONS AND SUBSEQUENT LITIGATION

Sony and Fujifilm signed the LTO7 Agreement with the TPCs at the end of
September 2015. (Cmplt. (Dkt. No. 1) ¶¶ 9, 78-79; id., Ex. 1 at 14; Yahiro Decl. (Dkt. No. 33)
¶ 19) After signing the LTO7 Agreement, Sony and Fujifilm engaged in negotiations regarding
the licensing of essential patents, but they could not reach agreement. (See Cmplt. (Dkt. No. 1)
¶¶ 86-91) On May 27, 2016, Fujifilm filed a complaint against Sony with the ITC, asserting
patent infringement claims related to Sony's manufacture of LTO7 products, and the ITC
instituted an investigation on July 1, 2016. (Id. ¶¶ 92-95, 99) On July 1, 2016, Fujifilm also
filed suit against Sony in Tokyo District Court in Japan, asserting similar patent infringement
claims related Sony's production of LTO7 products. (Id. ¶ 100)

Sony filed the Complaint in the instant case on July 27, 2016. (Cmplt. (Dkt.
No. 1); see also July 27, 2016 Sealing Order (Dkt. No. 4)) Sony subsequently moved for a
preliminary injunction. (Dkt. No. 19)

In its motion, Sony seeks an anti-suit injunction against Fujifilm's ITC and Tokyo
lawsuits. Sony contends that Fujifilm's patent infringement claims in these actions are premised
on Sony's use of patents that Fujifilm is required to license under the LTO7 Agreement. (Pltf.
Br. (Dkt. No. 20) at 1-2) Accordingly, Sony argues that the LTO7 Agreement's forum selection
clause applies, and requires that Fujifilm's claim be litigated in New York, New York. (Id. at 2)
Fujifilm responds that Sony – as a third-party beneficiary of only one provision in Fujifilm's
contract with the TPCs – lacks standing to invoke the forum selection clause against Fujifilm.
Fujifilm also contends that, in any event, the forum selection clause does not apply to the ITC

and Tokyo actions, because those actions are not "in connection with" the LTO7 Agreement, and

the forum selection clause only applies to disputes arising under the LTO7 Agreement. Fujifilm

also contends that granting the injunction would produce an "absurd result" in which this Court

would determine whether a foreign patent had been infringed. (Def. Opp. (Dkt. No. 26) at 1-2)

## DISCUSSION

### I. GOVERNING LAW

With respect to anti-suit injunctions involving proceedings before the ITC, the

Federal Circuit has stated that,

> [a]lthough this court generally applies the law of the respective regional circuit on
> questions of procedure, this court applies its own law in reviewing procedural
> matters arising from substantive issues in areas of law within its exclusive
> jurisdiction. In a case . . . involving an injunction against participation in . . . an
> ITC investigation . . . , [Federal Circuit] procedural law applies.

Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., 651 F.3d 1355, 1359 (Fed. Cir. 2011) (citing Tex.

Instruments Inc. v. Tessera Inc., 231 F.3d 1325, 1328 (Fed. Cir. 2000)).[4]  Here, both sides agree

---

[4]  The Court notes that the continuing validity of Gen. Protecht's holding on this point is unclear.
Gen. Protecht relies exclusively on Texas Instruments. Gen. Protecht, 651 F.3d at 1359. Texas
Instruments in turn relies on the principle that the Federal Circuit "applies its own body of
precedent to uniformly deal with procedural matters arising from substantive issues in areas of
law within the unique jurisdiction of this circuit." Tex. Instruments, 231 F.3d at 1328 (citing
Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 894 (Fed. Cir. 1998); Midwest
Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1360 (Fed. Cir. 1999)).

However, the cases cited by Texas Instruments do not extend quite that far.  For example,
Mikohn Gaming notes that, "[t]he Federal Circuit has generally viewed the grant of a
preliminary injunction as a matter of procedural law not unique to the exclusive jurisdiction of
the Federal Circuit." Mikohn Gaming, 165 F.3d at 894 (citing Nat'l Presto Indus., Inc. v. W.
Bend Co., 76 F.3d 1185, 1188 n.2 (Fed. Cir. 1996))  Similarly, Midwest Indus. states that, "[i]n
reviewing district court judgments in patent cases, we apply our own law with respect to patent
law issues, but with respect to nonpatent issues we generally apply the law of the circuit in which
the district court sits." Midwest Indus., 175 F.3d at 1359 (citing Atari, Inc. v. JS & A Group,
Inc., 747 F.2d 1422, 1440 (Fed. Cir. 1984) (en banc)).

And, in a case subsequent to Gen. Protecht, a panel of the Federal Circuit reiterated – in an
action to enjoin a foreign arbitration – that "[t]he issue . . . whether an anti-suit injunction should

that Federal Circuit law governs the issue of whether to grant a preliminary injunction to enjoin

participation in an ITC action. (Pltf. Br. (Dkt. No. 20) at 11–12; Def. Opp. (Dkt. No. 26) at 10).

As to the Tokyo action, Fujifilm argues that Federal Circuit law governs, because

the Tokyo action addresses foreign patents. (Def. Opp. (Dkt. No. 26) at 10). Sony contends that

Second Circuit law should apply, because whether a preliminary injunction should be granted

"does not raise an issue unique to Federal Circuit jurisdiction." (Pltf. Br. (Dkt. No. 20) at 11-12)

The Court concludes that because "[t]he issue [of] whether an anti-suit injunction should issue

. . . is not unique to patent law," Sanofi-Aventis Deutschland GmbH v. Genentech, Inc., 716 F.3d

586, 590–91 (Fed. Cir. 2013), and because the Tokyo action does not involve the ITC, Second

Circuit law applies.[5]

---

issue . . . is not unique to patent," such that "the law of the regional circuit in which this appeal
would otherwise lie" applies. Sanofi-Aventis Deutschland GmbH v. Genentech, Inc., 716 F.3d
586, 590–91 (Fed. Cir. 2013) (citing, inter alia, i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831,
841 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011); Paramedics Electromedicina Comercial, Ltda. v.
GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 649 (2d Cir. 2004)).

Accordingly, Texas Instrument's ruling that Federal Circuit law governs all "procedural
matter[s] arising from [Federal Circuit] substantive issues" lacks precedential support and is in
tension with the Federal Circuit's more recent precedent.

In any event, neither side has addressed this issue; both sides agree that Federal Circuit law
controls; and this Court's decision does not turn on which circuit's standard for injunctive relief
applies. Accordingly, this Court will apply Federal Circuit precedent in determining whether an
injunction should issue as to the ITC action.

[5] Voda v. Cordis Corp., 476 F.3d 887 (Fed. Cir. 2007) – cited by Fujifilm (Def. Opp. (Dkt. No.
26) at 10) – is not to the contrary. While Voda states that "supplemental jurisdiction over foreign
patent claims based on claims of U.S. patent infringement is a question unique to U.S. patent
law" to which Federal Circuit law applies, that case does not address which circuit's law applies
in making a determination as to injunctive relief. Voda, 476 F.3d at 891-92.

## II.    INJUNCTIVE RELIEF

### A.    Federal Circuit Standard

"According to [the Federal] [C]ircuit's law, a party seeking an injunction must show: (1) a reasonable likelihood of success on the merits; (2) irreparable harm; (3) a balance of hardships in its favor; and (4) a public interest in favor of the injunction." Tex. Instruments, 231 F.3d at 1329.

### B.    Second Circuit Standard

In the Second Circuit, a court may issue a preliminary injunction only where first,

> the plaintiff has demonstrated "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor." Second, the court may issue the injunction only if the plaintiff has demonstrated "that he is likely to suffer irreparable injury in the absence of an injunction." . . . Third, a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor. Finally, the court must ensure that the "public interest would not be disserved" by the issuance of a preliminary injunction.

Salinger v. Colting, 607 F.3d 68, 79–80 (2d Cir. 2010) (citations omitted).

However, "[w]here the movant seeks a mandatory injunction (one that will alter the status quo) rather than a prohibitory injunction (one that maintains the status quo), the likelihood-of-success standard is elevated: the movant must show a clear or substantial likelihood of success." Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 97 (2d Cir. 2005) (citing Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233 (2d Cir. 1999) (citing Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996))).[6]

---

[6] The Second Circuit has also cautioned that "principles of comity counsel that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint.'" Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 653 (2d Cir. 2004) (quoting China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987)). Accordingly, in cases involving a foreign litigation, "[i]f the threshold

## III. LIKELIHOOD OF SUCCESS ON THE MERITS

The forum selection clause in the LTO7 Agreement provides that "[t]he parties consent to the exclusive jurisdiction of courts located in New York, New York for all claims arising under or in connection with this Agreement." (Cmplt. (Dkt. No. 1), Ex. 1 § 11.11) The LTO7 Agreement does not define the term "parties," but Sony does not contend that it is a party to the LTO7 Agreement Fujifilm signed with the TPCs. Instead, Sony contends that it can enforce the forum selection clause as a third-party beneficiary, and because the LTO7 Agreement is part of a "global transaction." (Pltf. Br. (Dkt. No. 20) at 3; Pltf. Reply (Dkt. No. 25) at 2) Fujifilm argues, however, that Sony – as a third-party beneficiary – does not have standing to enforce the forum selection clause, because that clause does not reference third party beneficiaries, while other provisions of the LTO7 Agreement do reference third party beneficiaries. (Def. Opp. (Dkt. No. 26) at 11-13)

---

conditions [for injunctive relief] are met, the Second Circuit has approved a set of factors courts should apply to assess whether an [anti-suit] injunction should issue – the 'so-called China Trade factors.'" Bailey Shipping Ltd. v. Am. Bureau of Shipping, No. 12 CIV. 5959 KPF, 2013 WL 5312540, at *8 (S.D.N.Y. Sept. 23, 2013) (quoting Travelport Global Distribution Sys. B.V. v. Bellview Airlines Ltd., No. 12 Civ. 3483(DLC), 2012 WL 3925856, at *7 (S.D.N.Y. Sept. 10, 2012)).

Under China Trade, "[a]n anti-suit injunction against parallel litigation may be imposed only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined." Paramedics, 369 F.3d at 652 (citing China Trade, 837 F.2d at 35). If those requirements are met, a court must then weigh five additional factors. See China Trade, 837 F.2d at 35.

Because Sony has not satisfied the less onerous, traditional requirements for issuance of a preliminary injunction, the Court does not reach the question of whether it has satisfied the China Trade factors.

Under New York law,[7] "there are three sets of circumstances under which a nonparty may invoke a forum selection clause: First, it is well settled that an entity or individual that is a third-party beneficiary of the agreement may enforce a forum selection clause found within the agreement." Freeford Ltd. v. Pendleton, 53 A.D.3d 32, 38-39 (1st Dep't 2008) (citing ComJet Aviation Mgmt. LLC v. Aviation Inv'rs Holdings Ltd., 303 A.D.2d 272, 272 (1st Dep't 2003)). Second, "parties to a global transaction who are not signatories to a specific agreement within that transaction may nonetheless benefit from a [forum] selection clause contained in such agreement." PT. Bank Mizuho Indon. v. PT. Indah Kiat Pulp & Paper Corp., 25 A.D.3d 470, 471 (1st Dep't 2006). "Third, a nonparty that is 'closely related' to one of the signatories can enforce a forum selection clause." Freeford Ltd., 53 A.D.3d at 39 (citing ComJet Aviation Mgt., 303 A.D.2d at 273; Direct Mail Prod. Servs. Ltd. v MBNA Corp., 2000 U.S. Dist. LEXIS 12945, 2000 WL 1277597 (S.D.N.Y. 2000)). Sony contends that the first two categories are applicable here.

### A. Sony's Argument that It Is a Third-Party Beneficiary of the Forum Selection Clause

Section 8.2 of the LTO7 Agreement – the licensing section – states that other signatories to the LTO7 Agreement "are intended third party beneficiaries of this Section 8.2, with the power to enforce it directly." (Cmplt. (Dkt. No. 1), Ex. 1 § 8.2) Sony argues that because (1) it is a third-party beneficiary of Section 8.2; and (2) the forum selection clause dictates where the LTO7 Agreement – including Section 8.2 – can be enforced, Sony has the right to insist that Fujifilm bring its actions in New York. (Pltf. Br. (Dkt. No. 20) at 13-14; Pltf

---

[7] The LTO7 Agreement provides that it is to be interpreted according to New York state contract law. (Cmplt. (Dkt. No. 1), Ex. 1 § 11.11) The parties do not dispute that New York law applies here. (See Pltf. Br. (Dkt. No. 20) at 13 (citing New York contract law); Def. Opp. (Dkt. No. 26) at 1-2, 10-11 (same))

11

Reply at 1) Fujifilm counters that the reference to third party beneficiaries in Section 8.2, and

the absence of any reference to third party beneficiaries in the forum selection clause, shows an

intent not to extend third party beneficiary rights to the forum selection clause. According to

Fujifilm, under the maxim expressio unius est exclusio alterius, the LTO7 Agreement should be

interpreted as providing that other signatories to the LTO7 Agreement are not intended third

party beneficiaries of the forum selection clause. (Def. Opp. (Dkt. No. 26) at 12)

> A party asserting rights as a third-party beneficiary must establish "(1) the existence
> of a valid and binding contract between other parties, (2) that the contract was
> intended for his benefit and (3) that the benefit to him is sufficiently immediate,
> rather than incidental, to indicate the assumption by the contracting parties of a duty
> to compensate him if the benefit is lost."

Cal. Pub. Emples. Ret. Sys. v. Shearman & Sterling, 95 N.Y.2d 427, 434-35 (2000) (quoting

Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 336 (1983)) (citation

omitted).[8]

"[U]nder New York law 'it is well settled that "[a] third party [beneficiary] is

entitled only to those rights which the original parties to the contract intended the third party to

have.""" Republic of Iraq v. ABB AG, 769 F. Supp. 2d 605, 612 (S.D.N.Y. 2011) (quoting

Williams v. Progressive Ne. Ins. Co., 41 A.D.3d 1244, 1245 (4th Dep't 2007) (quoting Leavitt–

Berner Tanning Corp. v. Am. Home Assurance Co., 129 A.D.2d 199, 203 (3d Dep't 1987))),

aff'd sub nom. Republic of Iraq v. BNP Paribas USA, 472 F. App'x 11 (2d Cir. 2012). "Whether

a third party benefits from a contract depends on the contracting parties' intent, and the parties

can obviously intend for a third party to benefit from certain promises in a contract and not

---

[8] Fujifilm does not contest that the LTO7 Agreement is a "valid and binding contract" between
it and the TPCs. (See Def. Opp. (Dkt. No. 26) at 11-13)

others." Id. (citing Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc., 66 N.Y.2d 38, 44 (1985)).

Expressio unius est exclusio alterius is a maxim, or canon of construction, providing that "the expression of one thing is the exclusion of the other."[9] Realtime Data, LLC v. Melone, 104 A.D.3d 748, 751 (2d Dep't 2013) (citing Matter of Petersen v. Inc. Vil. of Saltaire, 77 A.D.3d 954 (2d Dep't 2010)). For example, where certain parties are explicitly listed as third party beneficiaries of a particular contractual clause, an inference may arise that the parties did not intend to extend third party beneficiary status to others. See, e.g., Drago v. A/S Inger, 194 F. Supp. 398, 408 (E.D.N.Y. 1961) ("While the shipowner is not specified as a beneficiary of the stevedore's promise to indemnify, two other classes are. . . . It would seem, therefore – expressio unius est exclusio alterius – that the parties to the contract did not intend to make the shipowner a beneficiary of this specific indemnity clause."), aff'd, 305 F.2d 139 (2d Cir. 1962).

The New York Court of Appeals has stated that where the "parties to a contract omit terms . . . that are readily found in other, similar contracts[,] the inescapable conclusion is that the parties intended the omission." Quadrant Structured Prod. Co. v. Vertin, 23 N.Y.3d 549, 560 (2014). Other courts have cautioned, however, that the expressio unius "doctrine is 'at best an unreliable basis for ascertaining intention,' assuming 'too much foresight in the draftsmen.'" Maison Lazard Et Compagnie v. Manfra, Tordella & Brooks, Inc., 585 F. Supp. 1286, 1289 (S.D.N.Y. 1984) (quoting Durnin v. Allentown Fed. Sav. & Loan Ass'n, 218 F. Supp. 716, 719 (E.D. Pa. 1963)).

---

[9] The maxim is sometimes rendered as inclusio unius est exclusio alterius. See Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs., 63 N.Y.2d 396 (1984).

Turning to the LTO7 Agreement, there is a certain logic to the idea that third-party beneficiaries explicitly granted the right to enforce certain provisions of a contract are also implicitly granted the right to insist that provisions dealing with enforcement of these clauses be adhered to. Indeed, Fujifilm does not contest the application of New York law here, even though the choice of law clause – contained in the same section as the forum selection clause – does not refer to third-party beneficiaries. (See Def. Opp. (Dkt. No. 26) at 1-2, 10-13) And it would not have been unreasonable for the parties to the LTO7 Agreement to have intended that all construction of the LTO7 Agreement be done by courts in a single jurisdiction.

The parties' explicit identification of other signatories such as Sony as third-party beneficiaries of Section 8.2, however, could very well suggest that Sony is not a third-party beneficiary of any other section of the LTO7 Agreement.[10] Moreover, the parties to Fujifilm's LTO7 Agreement are sophisticated, international, commercial entities that have access to the best legal services. If the parties intended to permit third party beneficiaries to assert the forum selection clause, the clause could have been drafted to include such language, or the forum selection clause could have been referenced in Section 8.2.

Moreover, the cases cited by Sony (see Pltf. Br. (Dkt. No. 20) at 13 (quoting Bernstein v. Wysoki, 77 A.D.3d 241, 251 (2d Dep't 2010) (quoting Freeford Ltd., 53 A.D.3d at 38-39)); Pltf. Reply (Dkt. No. 25) at 1 (quoting Freeford Ltd., 53 A.D.3d at 38), do not address

---

[10] In arguing that the forum selection clause is inextricably linked to the licensing section, Sony quotes Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696 (2d Cir. 2009) for the proposition that "a 'forum selection clause [is] integral to the obligations of the overall contract' and thus indivisible." (Pltf. Reply (Dkt. No. 25) at 1-2 (quoting Aguas Lenders, 585 F.3d at 701). But immediately before the language quoted by Sony, the Second Circuit states that, "[w]e see no reason to treat forum selection provisions differently from other contractual obligations." Aguas Lenders, 585 F.3d at 701. Here, if the forum selection clause is no different than any other provision of the LTO7 Agreement, there is little reason to read into the forum selection clause an intent to extend its protections to third parties.

the circumstances here – a contract that explicitly grants third party beneficiary status in only one provision. "'[L]ook[ing] to all corners of the document,'" HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP, 7 F. Supp. 3d 363, 370 (S.D.N.Y. 2014) (quoting Int'l Klafter Co. v. Continental Casualty Co., 869 F.2d 96, 99 (2d Cir. 1989)), does not assist Sony because – in the context of the entire LTO7 Agreement – it is not implausible to conclude that the insertion of third-party beneficiary rights in one provision betrays an intention to exclude such rights elsewhere in the Agreement.

In sum, the Court cannot find – at this stage of the litigation – that Sony has shown a likelihood of success on the merits of its claim that third-party beneficiaries of the licensing section are also implied third-party beneficiaries of the forum selection clause.[11]

## B.     The LTO7 Agreements Were Not Part of a "Global Transaction"

In its Reply, Sony argues – for the first time – that it has standing to invoke the forum selection clause because the LTO7 Agreements that Sony and Fujifilm entered into with

---

[11] Although neither side contends that the LTO7 Agreement is ambiguous as to the forum selection clause issue (see Def. Opp. (Dkt. No. 26) at 13 n.14; Pltf. Reply (Dkt. No. 25) at 1-2), both sides have submitted declarations from employees involved in the negotiation of their respective LTO7 Agreements. Not surprisingly, each declarant takes the position that the declarant's company would not have entered into the LTO7 Agreement had it understood that the other side's interpretation of the forum selection clause would govern. (See Murai Decl. (Dkt. No. 24) ¶¶ 21-22, 30); Yahiro Decl. (Dkt. No. 33) ¶ 22)

"Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993) (internal quotation marks omitted) (citations omitted). "[I]f ambiguity exists, then extrinsic evidence of the parties' intent may be looked to as an aid to construing the contractual language." Id.

Here, based on the current record, this Court concludes that the LTO7 Agreement is ambiguous, because both sides have offered interpretations of the Agreement that are reasonable. Resolution of this issue must await the submission of a complete record reflecting extrinsic evidence of the parties' intent.

the TPCs were part of a "global transaction." (Pltf. Reply (Dkt. No. 25) at 2) "[A]rguments raised [for the first time] in reply papers are not properly a basis for granting relief," of course. United States v. Letscher, 83 F. Supp. 2d 367, 377 (S.D.N.Y. 1999) (citations omitted) ; see also United States v. E. River Hous. Corp., 90 F. Supp. 3d 118, 161 (S.D.N.Y. 2015) (collecting cases). In any event, it is clear the Sony's argument is without merit.

"[P]arties to a global transaction who are not signatories to a specific agreement within that transaction may nonetheless benefit from a [forum] selection clause contained in such agreement." PT. Bank Mizuho Indon. v. PT. Indah Kiat Pulp & Paper Corp., 25 A.D.3d 470, 471 (1st Dep't 2006) (citing BWA Corp. v. Alltrans Express U.S.A., Inc., 112 A.D.2d 850, 852 (1st Dep't 1985)).

> Where several instruments constitute part of the same transaction, they must be interpreted together. In the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together, it being said that they are, in the eye of the law, one instrument.

BWA Corp., 112 A.D.2d at 852 (citing Nau v. Vulcan Rail & Constr. Co., 286 N.Y. 188 (1941)); see also Indosuez Int'l. Fin. B.V. v. Nat'l Reserve Bank, 98 N.Y.2d 238, 246-248 (2002) (applying global transaction doctrine where the same two parties signed 14 agreements that specified they were part of a global transaction)).

Here, the parties to the two contracts are not the same. While the TPCs signed both agreements, Sony signed one agreement, and Fujifilm signed a separate agreement. Indeed, were the separate LTO7 Agreements meant to be part of a global transaction, there would have been no need for the licensing section to include language identifying other LTO7 Agreement signatories as third-party beneficiaries. In sum, Sony's global transaction argument is unlikely to succeed on the merits.

## CONCLUSION

Because Sony has not shown a likelihood of success on the merits, its motion for

a preliminary injunction is denied.  The Clerk of Court is directed to terminate the motion.  (Dkt.

No. 19)

Dated: New York, New York
       September 28, 2017

SO ORDERED.

Paul G. Gardephe
United States District Judge